FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 10, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SPOKANE RIVERKEEPER,

    Plaintiff,

v.

CHS INC.,

    Defendant.

No. 2:21-CV-00280-MKD

CONSENT DECREE

ECF No. 18

CONSENT DECREE - 1

## I. STIPULATIONS.

The parties stipulated to the following, *see* ECF No. 18-1 (parties' signed proposed Consent Decree):

Plaintiff Spokane Riverkeeper ("Riverkeeper") sent sixty-day notice of intent to sue letters to defendant CHS Inc. ("CHS") on or about June 30, 2021, and May 27, 2022, and filed a complaint on September 21, 2021, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, relating to discharges of stormwater from CHS's facility in Rockford, Washington, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

Riverkeeper and CHS agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

Riverkeeper and CHS stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding Riverkeeper's claims or allegations set forth in its complaint and its sixty-day notice letters.[1]

---

[1] The signed version of the parties' proposed consent decree is found at ECF No. 18-1.

CONSENT DECREE - 2

## II. ORDER AND DECREE.

THIS MATTER came before the Court upon the parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. The Joint Motion for Entry of Consent Decree, **ECF No. 18,** is **GRANTED.**

2. This Court has jurisdiction over the parties and subject matter of this action.

3. Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreement set forth herein.

4. This Consent Decree applies to and binds the parties and their successors and assigns.

5. This Consent Decree and any injunctive relief ordered within applies to the operation, oversight, or both by CHS of its Facility at 450 West Lee Street, Rockford, WA 99030 (the "Facility"), which is subject to National Pollutant Discharge Elimination System Permit No. WAR302313 (the "Permit"). The "Facility" includes the parcels or properties southeast of the railroad tracks, north of West Emma Street, and west of South Weaver Street (the "Southern Portion of the Facility").

CONSENT DECREE - 3

6. This Consent Decree is a full and complete settlement and release of all the claims alleged in the complaint and the sixty-day notice letters. These claims are released and dismissed with prejudice.

7. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Riverkeeper in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of CHS.

8. Injunctive Relief:

   a. CHS will comply fully with all conditions of the Permit and any successor, modified, or replacement permit authorizing discharges of stormwater associated with industrial activity from the Facility.

   b. For a period of two (2) years after the entry of this Consent Decree, CHS will, on a quarterly basis, electronically forward to Riverkeeper copies of all communications to and/or from Ecology related to the Permit or stormwater discharges from the Facility.

   c. Not later than thirty (30) days after entry of this Consent Decree, with the assistance of Farallon Consulting or another qualified stormwater consultant, CHS will prepare a draft update of its stormwater pollution prevention plan ("SWPPP") to include best management practices that CHS has implemented and intends to implement at the Facility. These

CONSENT DECREE - 4

best management practices will include the installation of Grattix boxes to address roof runoff associated with the Southern Portion of the Facility, the installation of a rock filter apron around the stormwater catch basin located in the main yard, measures to ensure compliance with the applicable total suspended solids numeric effluent limitations, and a revised monitoring plan that satisfies the requirements of the Permit.  The draft SWPPP update will be transmitted to Riverkeeper, which will have its stormwater expert review the draft and prepare comments as appropriate.  The comments will be promptly shared with CHS, which will then, with its consultant's assistance, consider and respond in good faith to the comments and finalize and transmit to Riverkeeper the revised SWPPP within thirty (30) days of receipt of Riverkeeper's expert's comments.  CHS agrees to promptly reimburse Riverkeeper for the reasonable cost of its expert's review of the draft SWPPP update in an amount not to exceed $3,500.00.

        d.     In the event that CHS triggers a Level 2 or Level 3 corrective action under the terms of the Permit during the duration of this Consent Decree, CHS will provide Riverkeeper with a copy of the written corrective action plan or engineering report (if required by the Permit) submitted to Ecology by May 15 of the year following the benchmark exceedances giving rise to the corrective action, and will implement additional structural or

CONSENT DECREE - 5

treatment BMPs by August 31 of that year (if a Level 2 corrective action is triggered) or additional treatment BMPs by September 30 of that year (if a Level 3 is triggered), which, in the judgment of a qualified stormwater professional, will achieve compliance with Permit benchmarks in future discharges.

    e.    In the event CHS exceeds the Permit's total suspended solids numeric effluent limitations of 27 mg/L monthly average or 88 mg/L daily maximum during the duration of this Consent Decree, CHS will provide Riverkeeper with a copy of a written report that satisfies the requirements of Special Condition S9.F of the Permit and will, subject to any necessary Ecology approvals, implement the steps identified in that report within 120 days of the exceedance.

9.    Within thirty (30) days of entry of this Consent Decree, CHS will pay $151,000.00 (ONE HUNDRED FIFTY-ONE THOUSAND DOLLARS) to The Coeur d'Alene Tribe for habitat restoration projects, as described in Exhibit A attached to this Consent Decree. The check will be made to the order of The Coeur d'Alene Tribe and delivered to: P.O. Box 408, Plummer, ID 83851. Payment will include the following reference in a cover letter or on the check: "Consent Decree, Riverkeeper v. CHS Inc., E.D. Wash. No. 2:21-cv-00280." A copy of the check and cover letter, if any, will be sent simultaneously to Riverkeeper and its counsel.

CONSENT DECREE - 6

10. Within thirty (30) days of entry of this Consent Decree by the Court, CHS will pay $64,000.00 (SIXTY-FOUR THOUSAND DOLLARS) to cover Riverkeeper's litigation fees, expenses, and costs (including reasonable attorney and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Richard Smith.  CHS's payment will be in full and complete satisfaction of any claims Riverkeeper has or may have, either legal or equitable, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation.

11. A force majeure event is any event outside the reasonable control of CHS that causes a delay in performing tasks required by this decree that cannot be cured by due diligence.  Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this decree, provided that CHS timely notifies Riverkeeper of the event; the steps that CHS will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

12. CHS will notify Riverkeeper of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after CHS becomes aware of the event.  In such event, the time for performance of

CONSENT DECREE - 7

the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

    a.    Acts of God, war, insurrection, or civil disturbance;

    b.    Earthquakes, landslides, fire, floods;

    c.    Actions or inactions of third parties over which defendant has no control;

    d.    Unusually adverse weather conditions;

    e.    Restraint by court order or order of public authority;

    f.    Strikes;

    g.    Any permit or other approval sought by CHS by a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where CHS has timely and in good faith sought the permit or approval;

    h.    Pandemic; and

    i.    Litigation, arbitration, or mediation that causes delay.

13. This Court retains jurisdiction over this matter. And, while this Consent Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding

CONSENT DECREE - 8

the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any proceedings seeking to enforce the terms and conditions of this Consent Decree.

14. The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA.

15. This Consent Decree will take effect upon entry by this Court. It terminates two years after that date.

16. Both parties have participated in drafting this Consent Decree.

CONSENT DECREE - 9

17. This Consent Decree may be modified only upon the approval of the Court.

18. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party. The parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

19. Notifications required by this Consent Decree must be in writing by email. For a notice or other communication regarding this decree to be valid, it must be delivered to the email addresses listed below or to any other address designated by the receiving party in a notice in accordance with this paragraph 19.

**If to Riverkeeper:**

Jerry White (jerry@spokaneriverkeeper.org)

    **And to:**

Richard Smith (richard@smithandlowney.com) and

Claire Tonry (claire@smithandlowney.com)

**If to CHS:**

Matthew Stock (matthew.stock@hcmp.com) and

Meghann Kantke (Meghann.Kantke@chsinc.com)

A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m.

CONSENT DECREE - 10

on a business day, or on a day that is not a business day, then the notice will be deemed received at 9:00 a.m. on the next business day.

DATED March 10, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

CONSENT DECREE - 11



# COEUR D'ALENE TRIBE

850 A Street
P.O. BOX 408
PLUMMER, IDAHO 83851
(208) 686-1800 ☐ Fax (208) 686-1182

November 17, 2022

Citizen Suit Coordinator
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

Re: Spokane Riverkeeper v. CHS, Rockford Agronomy

Dear Citizen Suit Coordinator:

    The Coeur d'Alene Tribe is a federally recognized Native American Tribe in northern Idaho. Since time immemorial the Coeur d'Alene People have relied upon the natural landscapes within our homeland for material and spiritual sustenance. The Hangman Creek watershed, which originates within the exterior boundaries of the Coeur d'Alene Reservation, has always been central to our way of life and existed in a pristine state at least until the mid- to late 1800's. The enforced allotment of the Reservation in 1906 resulted in many changes in the watershed that impoverished the people and led to the degradation of water quality, streams and wetlands, and extirpation of salmon from our homeland.
    The Tribe is looking to change this narrative, however, and over the last 20 years the Hangman Creek watershed has been the target of comprehensive, coordinated management actions and restoration measures with the goals of improving water quality and providing suitable habitats for resident redband trout and returning culturally significant Pacific salmon. The Tribe invests nearly one million dollars annually to support this effort. The initiative is gaining momentum and we are beginning to see positive responses, including reductions in erosion and recovery of important stream and wetland functions. Following up on these successes we have started annual cultural releases of juvenile and adult Chinook salmon to the watershed for the first time in more than a century.
    We have reviewed the Consent Decree between the Spokane Riverkeeper and CHS, Inc. (CHS) and its co-defendants, and as the duly elected Chairman of the Tribal Council, I am authorized to make the following binding commitments on behalf of the Coeur d'Alene Tribe Natural Resources Department (NRD):

1. I understand that the Coeur d'Alene Tribe should receive $151,000 from CHS as specified in the Consent Decree;
2. The Coeur d'Alene Tribe shall use the CHS funds working with partners

wholly dedicated to environmentally beneficial projects which restore natural watershed processes and improve water quality of the Hangman Creek Watershed, a significant tributary to the Spokane River approximately 40 miles from the Rockford Agronomy Site and a mere 5 miles from the Coeur d'Alene Tribe Reservation;
3. The Coeur d'Alene Tribe NRD and partners are performing stream, riparian and wetland restoration projects within the Hangman Creek Watershed, between 2023-2025, and this work will result in demonstrable improvements in non-point source pollution reduction, as well as improve habitats for native species such as redband trout and chinook salmon;
4. Potential projects identified for implementation as part of the settlement agreement include riparian buffer establishment, stream and floodplain enhancement and upland planting.
5. After funds have been disbursed and expended, the Coeur d'Alene Tribe NRD shall send a report to the Justice Department, the Court and the Parties describing how the funds were utilized and demonstrating conformance with the stipulations of the Consent Decree.

All funds received by the Coeur d'Alene Tribe will be used solely for the purposes outlined in the proposed settlement, and no portion of those funds will be used for political lobbying activities. No portion of the funds received from this settlement will be distributed to the plaintiff.

Thank you for your consideration. Should you have any questions, please do not hesitate to contact me at the phone number listed above. Any questions regarding the implementation of watershed improvement projects identified in the settlement agreement and the use of funding for this purpose can be directed to our Natural Resources Director, Caj Matheson, at (208) 686-1009.

Respectfully,

*Chief Allan*

Chief J. Allan
Chairman